Let's turn now to 19-3102 Gerard v. City of New York. Let's make sure that we appear to have both counsel here. For the appellant, do we have Mr. Ratti? Is that how I pronounce it? Yes, Ratti. And then for the appellee, we have Ms. Gottlieb. Yes, hello. Great, and we can hear you both. So let's proceed. Mr. Ratti, you have reserved three minutes for rebuttal. Thank you. Good morning, your honors. May it please the court. My name is Mark Ratti. I represent the appellant, Andre Gerard. The district court erred in granting qualified immunity to Detective Bea and dismissing appellant's excessive force claim because it was clearly established that threatening to shoot a detainee at gunpoint in an attempt to force him to shave a religious beard violates the Constitution. Qualified immunity protects officers only when their conduct does not violate clearly established law of what your reasonable officer would have known. It does not protect officers when the unlawfulness of their alleged conduct is apparent. Now, in determining whether a right is clearly established, this court has recently noted that it considers decisions from the Supreme Court, this circuit, and other courts of appeal. The Supreme Court has also recently reminded us that a general constitutional rule that has already been defined by case law may apply with obvious clarity to the specific conduct in question, and this is one of those situations where the conduct was so obviously unconstitutional. In Graham... Do you agree that we haven't decided this question? I agree that it has not been decided, yes. But I think in Graham gives us guidance from the Supreme Court where it's been clearly established since Graham that the use of force may violate the Constitution if it's objectively unreasonable, and that depends on the severity of the crime, whether the suspect posed an immediate threat, and whether he was resisting arrest or attempting to flee. Well, hang on, and let's just pause there. Do you suggest that there was a use of force here or a threat of a use of force? Under Graham, the pointing of a gun at a suspect is a use of force when it's coupled with the touching to have use of force. There can be a threat or coercion. It can be enough, and it's based on these factors. The severity of the crime here, the crime was not severe. The appellant was charged with crimes relating to the theft of over-the-counter medications. There was no evidence that the appellant posed an immediate threat to anybody or that Detective there was no evidence that he attempted to physically harm anyone, and he had no weapon. There's no evidence in the record that the appellant was attempting to flee or resisting in any way other than verbally. He was secure in handcuffs in custody of the officers at the time. And this is not one of the... Help us, Mr. Rowdy. Could you point specifically to the page in the appendix, and I believe it was in... Correct me if I'm wrong, but I think it was in Mr. Girard's... Where was it? You tell me. Where was it he specifically makes the factual statement about the guard pulling out the gun? Was it where... Specify whether he pointed the gun at him or whether he was waving it around. Just... I want to make sure I'm looking at the right thing. The appellant alleges that Detective Villa held him, quote, at gunpoint, quote, pulled a gun out on me, and, quote, threatened to shoot my black ass. Those are all at appendix 18, page 18, paragraph 8. I believe that's the complaint. And on the docket, it's number 62, pages 2, 24, 33. I believe that's his deposition. What's that page for the deposition? That's what I wanted. 62, docket number 62, pages 2, 24, 33, and 63, pages 27, 32 to 33, and 37. These are all listed in my reply brief. Also, he claims that in opposition to summary judgment, he said that along with the verbal threat to shoot him, he quotes, quote, he writes, however, his physical gun was pointed at plaintiff along with his verbal threat to shoot plaintiff's black ass if I continue to refuse to shave. That's docket number 62. That's his opposition brief. Docket 63 is his deposition. Sorry about that. Yeah, I'm sorry. So, it's 63. I mean, it's one thing to say something in your opposition, but the deposition is where we have the facts, right? Right. But this court, because the appellant was pro se at the time, this court can consider what he said in opposition to the motions to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion. So, this court can consider those statements also in addition to his deposition testimony. And that's helpful because the one thing I think what we'll need to do is frame what the specific factual allegation is on the part of Mr. Girard. And so, I take it you're saying that if we look, taking into consideration his pro se status, we should consider the facts, we should include him, whatever the words are, basically pointing the gun at me. Correct. Yeah. And if the court considers that, then the facts are in line with cases from other circuits and district courts where they found that pointing a gun at somebody and threatening to shoot them can be excessive force in violation of the constitution, whether it's the fourth or 14th amendment. Those cases are generally analyzed the same under the circuits and Supreme Court precedent. So, what is your best case from the Supreme Court? I take it is Graham, right? Correct. But that's a quite a fair level of generality. And we've said for qualified immunity that you can't operate at such levels of generality. So, then what is your best case from our court? All right. Two cases. One from the Supreme Court where they recently said in Taylor versus Riojas that clearly established law can be obvious that where the constitutional rule has already been defined by case law, it may apply with obvious clarity in specific situations in question. And that's the case here. Also, I know it's a non-presidential opinion, but in Mills, this court did say that circuit law could support a claim that a gunpoint death constitutes excessive force under Graham. And there's a number of district court cases where they use Graham to analyze the same type of facts that we have here. I guess my concern with Mills is it is actually a non-presidential decision. So, if anybody were to read Mills, they would know there'd be a notice that that's not actually a binding precedent of this court, right? I think lawyers would know, but officers who read it may not understand that. So, it could give notice, but also there's cases from other circuits that give fair notice and also district courts. And this court in defining clearly established law can look to cases from other circuits and district courts that take a certain stand or foreshadow a ruling on the issue. And I believe the 1st, 3rd, 6th, 7th, 9th, and 10th circuits have all addressed situations similar to this one and have found that there can be excessive force in this situation and a number of district courts also. And also, this is just obvious, I think, to any officer that pointing a gun at somebody to force them to shave a beard is excessive. Even the district court in this case noted that Detective Bia's alleged actions were disproportionate and unreasonable. And I think that the jury should have gotten the facts presented by both sides to decide the issue. And would you agree that the facts, the relevant facts that would need to be looked at would include the facts that I think by Mr. Girard's own reporting, he was screaming and yelling and resisting compliance with a lawful court order. Is that also part of the factual scenario we have here? Yeah, that's definitely one of the facts that should be considered. But that goes to one of Graham elements, whether he was posing a threat or resisting. And verbally resisting is different than physically resisting. Physical resistance may, in some situations, require a gun to be pulled out. But just cursing and verbally refusing to comply is not one of those situations that warrants a gun. Well, I might see a circumstance that could trigger, cause an officer to wish to cursing and was angry and was was was kind of on the edge. There might be an attack and imminent from this person, in which case the officer would need to take, might need to take precautions. You don't want to wait for an attack and get beat, start, start, have the person start beating on you before you have to have to result to some kind of force. So that it depends on the if he's just screaming and yelling and he doesn't seem to be threatening the officer, that's one thing. But if he does seem to be threatening the officer with violence, that may be another. I agree. And there's no evidence in the record here that the appellant was threatening the officer physically or that the officer believes that he was being physically threatened. In fact, there is no evidence at all in the record disputing the appellant's version of events, not even an affidavit from the officer denying pulling out the gun. So I think that this is a case that should have gone to the jury to decide what happens. Very good. Thank you. You've reserved three minutes for rebuttal. So Ms. Gottlieb, why don't we hear from you? Good morning. Anna Gottlieb for Appalese. May it please the court. This court should affirm the district court's decision for two reasons. First, the district court correctly held that there is no clearly established law in this circuit that would put officers on notice that a threat with no physical contact that resulted in no injuries could amount to excessive force. Second, this is a case where appellant's testimony, which is the only evidence we have here, should be disregarded as a matter of law because it is so improbable and inconsistent that no rational juror could credit it. Appellant testified that a detective pulled out a weapon and threatened to shoot him inside the Manhattan criminal courthouse complex during a court-ordered lineup with an ADA present. And that ADA supposedly egged on the detective by saying, yes, forcibly shave off appellant's beard. Yet when appellant filed numerous grievances after the lineup, including a notice of claim with the city, he did not mention any gun. He did not mention any threat. He merely complained that was issued a dull razor blade and that he cut his face. But even if appellant's improbable testimony is to stand under the qualified immunity doctrine, the excessive force claim here fails because there's simply no law in the circuit that clearly establishes this conduct is unconstitutional. There are no cases that speak to conduct where there is no physical contact and where there are no injuries and certainly no cases that would provide an officer with the requisite specificity that the qualified immunity doctrine requires. The one case mentioned by appellant's counsel Mills v. Finger, as mentioned, is an unpublished case. And that case actually is helpful here because there, the holding is that the officer did not, the facts there weren't sufficient for an excessive force violation because the plaintiff only testified that he, that the officer pulled out a weapon and it was unclear what he did with the weapon. And that's exactly the scenario we have here. The deposition only says that the officer pulled out the weapon. And I understand that Mr. Gerard proceeded pro se in district court, but actually with his opposition to the summary judgment papers, he submitted a declaration, a sworn declaration. And he does not mention the words at gunpoint or that the gun was pointed to him there in the sworn declaration. So even though he was pro se, he understood the difference between sworn and unsworn papers. And he only mentioned the at gunpoint language in the, in the unsworn opposition rather than in the declaration. So can we pause there for a second? So first tell me where exactly I'm going to find the sworn declaration. Just where is that in the record specifically, which docket entry? It's docket entry 69. And on page three of that, he wrote that the officer drew his firearm and then on page seven that he threatened to shoot him. But there is no, there's no mention that the gun was pointed at him or the words gunpoint are mentioned. And that is a distinction that there actually isn't enough evidence here. I'm sorry, there's not enough case law in the circuit that would speak to those circumstances with the requisite specificity. The Graham tests that appellant's counsel mentioned tests like Graham and specifically that test under White v. Pauly, the Supreme Court has held that it's not enough to put an officer on notice. So while those factors are helpful, it's not enough here to provide with with the notice that is required. And, and there are no, there are no cases in the circuit that speak to these circumstances. And, and that's important because this is a situation where an officer used words and he, according to appellant, pulled out a weapon. He didn't actually use any modicum of physical force. And that is a distinction that matters. And one that's. Counsel, let's assume that you take the, take the plaintiff at his word, and there's just a pointing of the gun and then a threat to shoot. It's your position that that's not enough. Because I want to clarify, we're not actually talking about whether that is excessive force or that is an excessive force. That's actually not the question posed here. The question posed here is whether the law in the circuit is clearly established that that violates the constitution. So, okay, good. Well, that's, that's one thing. But the second thing is I'm looking at the underlying action to see whether it's excessive force and, and, and because it's possible that this court could decide, could, could establish the constitutional rule for future cases, but, but grant qualified immunity in this case. And that's, so I'm trying to understand what your position is on whether there was a violation of the constitution, not whether it was, it was clearly established. So in this appeal, we may, we don't make arguments about the underlying constitutionality of the actions. I know that, but we have the, we can go two ways here. One is we can just decide the qualified immunity point and not address the constitutional question, or we can address the constitutional question for future cases and, and go with qualified you know, that's, that there's a, that's another option. So I'm looking at all three of them. Sure. So, so on the actual question about whether this was a constitutional violation, which again, wasn't brief because we, we, we maintain that this is not clearly established and we don't need to reach that question here. But again, here, because there is no force that was it under the, if we are taking a pound's deposition testimony at its word, there was no force that was interesting to hear you say that, because I think if a guy pointed a gun at me and said, I want you to do X I would feel coerced. I would feel, I would feel that I had no option. I would feel that it was forced. The threat becomes the force with a gun, with a gun being pointed at, at you. That's, that's my, my, my, my question. I've never had a gun pointed at me, but if I did, I, I thought about it a lot because we get a lot of these cases and it's a, it's, it's not a, it's, it's a serious moment. Absolutely. And, and that, that absolutely goes without saying the issue is whether the force is excessive. And as was mentioned earlier, that the facts here, it is a very fact specific inquiry. So here we have appellant who was boisterous and profanely not complying with a lawful court order for a repeated time. So, so these are certainly circumstances that matter and, and whether the force would be excessive is, is a fact intensive inquiry. And we maintain that here, that that was not the case. But again, our, the only argument we're making here is that it was not clearly established. And because this debate is happening here in this way, that actually, that proves the point that this is not beyond debate as was required by Supreme Court precedent. For a law to be clearly established, it does need to be beyond debate. It needs to be no longer an open question. And even, even if we are to look outside the circuit, which should not inform this inquiry, there is a mix. The third circuit, the sixth circuit and the 11th circuit have had, have had cases where there was a gun that was actually pointed, that have found that that wasn't enough for a constitutional violation. So, so that again, informs whether the law is clearly established, but those cases actually speak to, and they're cited to in our brief, those speak to the fact that other courts have found there to not be an underlying constitutional violation when a gun is pointed in certain circumstances. And if there are no further questions here, we rest on our briefs. Thank you. Judge Wesley is poking at his screen. Do you have a question? No, I don't. You don't realize it, but my computer completely crashed. So I missed a little bit of the appellant's argument, but I'm, I'm back and, and heard enough. I'm good. Thank you. Okay. Thank you very much, Ms. Godley. And Mr. Ratty, you have reserved three minutes for rebuttal. So why don't you go ahead? Thank you. As to the appellant's credibility, that's an issue that the jury decides. And it's also an issue that the district court never reached. They just resolved this on qualified immunity grounds. So I don't think it's something that should be decided for this first time in this court. Issues of facts that also need to be decided by the jury is whether or not the gun was pointed at his head, where the gun was pointed, if there was a gun pointed at him at all. These are all issues for a jury to, to resolve. And, and there is second circuit and other case law. It's in the brief that says that injuries resulting from use of force can be psychological. They don't need to be physical. Yeah. But those cases, weren't they cases where there were multiple injuries, you know, there was physical injury, psychological injury. And the question would be whether sort of on top of it all, we cared about the psychological injury. I don't think any of the cases you cited suggested that psychological stress alone constituted injury, right? That may be true. Yes. I don't, I don't recall exactly the facts of each case, but perhaps it's an issue that hasn't been decided and this court may want to decide. But if it were something we haven't addressed, that doesn't really bode well for a qualified immunity case, right? If we were saying, well, it's an open question, wouldn't it be nice to let the world know what the answer is that would suggest that people don't already know the answer, which would mean your client loses unqualified immunity, right? Oh, that would be true. But I think that the case law I mentioned before, Graham says you don't need physical touching and you're probably not going to have a physical injury if there's no physical touching. Other circuits have followed Graham to find the same thing in situations like this. Doesn't foreshadowing normally require foreshadowing by the Supreme Court decisions or by our prior decisions, as opposed to what happens in other circuits? This court has said that decisions from other circuits and district courts can provide foreshadowing on an issue. I'll just pull up that case for you. I thought the point of those cases was that sometimes a proposition is so utterly obvious that it never happened to come up in our circuit. But you can look at all the other circuits, they've all held the same thing, which is sort of evidence of just how patently obvious the point is. And if by luck of the draw, there just didn't happen to ever be a case in the second circuit, or we were the eighth circuit to look at something, that doesn't make it any less obvious. But it seems that we just come back to the same essential point where it has to be so obvious that any police officer, or in this case, correctional officer, would absolutely be on notice that what they did is unconstitutional. That's true. I think that's the situation here. You think it is. But on the other hand, if he'd fired the gun into the ceiling, that might be a little different. Or if he'd fired the gun close to the guy, that would be a little different. He didn't do that. He just pointed the gun. And so I don't know the obviousness of it, just by pointing the gun. Well, I think pointing a gun at somebody is definitely a use of force. And in this case, doing it because somebody isn't shaving their beard is excessive. I know I recently got a haircut and because my wife was nagging at me to do it, but if she had pointed a gun at my head, it's a little much. It depends on what your beard looked like, I suppose. I guess so. So I think in situations like this, it's obvious that just to make somebody shave, you don't need to be pointing a gun at them. And if we're going to credit the appellants... I mean, if you're going to recite those facts, he was ordered to shave by the court, right? Correct. Actually, the second court order did not point a gun at you. It was, you know, you're violating a court order by not shaving. So he was acting unlawfully by not shaving. Yeah, that's true. There's actually a distinction. There were two court orders in this case for two lineups. And the first one allowed the use of reasonable force, I believe was in the order. The second one did not say that. So that's a distinction there. In order to compel him to shave, force is not authorized in this case. And even if force was authorized, a gun is excessive. That's all. Thank you to both of the counsel who have argued this, very well argued. We appreciate your helping us decide this case today. We will be taking the case under advisement. So thank you. Thank you.